UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

U.S. BANK NATIONAL ASSOCIATION,

        Plaintiff,

v.                                                     Case No. 13-C-0257

JEFFREY S. LONG,

        Defendant.

**DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff U.S. Bank National Association ("the Bank") brought this diversity action to collect the balance due and owing under a "Continuing Guaranty (Unlimited)" (hereinafter, "the Guaranty") given by Defendant Jeffrey S. Long. The case is before the Court on the Bank's motion for summary judgment. For the reasons that follow, the Bank's motion will be granted.

**BACKGROUND**

The Guaranty covers all loans and other indebtedness owed to the Bank by East South River, LLC ("ESR"), a Wisconsin limited liability company. The loans were secured by, among other things, mortgages and security agreements on a commercial office building located at 1025 East South River Street, Appleton, Wisconsin (the "Real Estate"). Long, who was the managing member of ESR at the time, executed and delivered the Guaranty to the Bank on or about June 26, 2007.

By its terms, the Guaranty induced the Bank to extend credit to ESR and guaranteed payment whenever the "Obligations" of ESR became due. (*Id.* at ¶¶ 10, 13.) The Guaranty broadly defines "Obligations":

> As used herein, the term "Obligations" shall mean all loans, drafts, overdrafts, checks, note and all other debts, liabilities and obligations of every kind owing by the Borrower to the Bank, whether direct or indirect, absolute or contingent, liquidated or unliquidated whether of the same or a different nature and whether existing now or in the future, including interest thereon and all costs, expenses and reasonable attorneys' fees (including fees of outside counsel) paid or incurred by the Bank at any time before or after judgment in attempting to collect any of the foregoing, to realize on any collateral securing any of the foregoing or this Guaranty, and to enforce this Guaranty.

(*Id.* at ¶ 13.)

Several other sections of the Guaranty are pertinent to this case. The Guaranty provides that the Guarantor [Long] "agrees that the Bank does not have to take any steps whatsoever to realize upon any collateral securing the Obligations, or to proceed against the Borrower or any other guarantor or surety for the Obligations either before or after proceeding against the Guarantor." (*Id.* at ¶ 14.) The Guaranty permitted the Bank to "settle, modify, release, compromise or subordinate any Obligation, any collateral securing any Obligation or this Guaranty . . . [and] apply any payments and all other amounts . . . from liquidation of any collateral . . . in any manner that the Bank elects" without reducing or discharging the Guarantor's liability. (*Id.* at ¶ 15.) Long's liability was not to "be reduced or discharged by the Bank's failure or delay in perfecting (or to continue perfection of) any security interest, mortgage or other lien on any collateral securing the Obligations or this Guaranty, or to protect the value or condition of any such collateral." (*Id.*) Long also "expressly waives all rights of setoff and counterclaims, as well as diligence in collection or prosecution, presentment, demand of payment or performance, protest, notice of dishonor, nonpayment or nonperformance of any Obligation." (*Id.* at ¶ 16.) Finally, Long "specifically, unconditionally, and jointly and severally" waived a variety of defenses:

> (I) change of ownership of any collateral covered by any mortgage, deed of trust or security agreement or other security instrument securing the Obligations; . . . (iv) sale or other disposition, either in whole or in part, of any collateral for the Obligations, without notice to the Guarantor unless otherwise required by applicable law; . . . or (viii) any other defenses based on suretyship or impairment of collateral.

(*Id.* at ¶ 17.) Shortly after he executed this guaranty, Long gifted his interest in ESR to his siblings and no longer had any role in the operations of ESR. (Aff. of Jeffrey Long ¶ 9, ECF No. 20-2.)

Several years later, ESR defaulted on its loan obligations. (PPUF ¶ 18, ECF No. 16.) In November 2012, the Bank initiated an action in Outagamie County Circuit Court to foreclose on the Real Estate. (*Id.* at ¶ 19.) Instead of following through on the foreclosure action, however, the Bank and ESR entered into a Deed in Lieu of Foreclosure Agreement ("DIL Agreement") in December 2012. (*Id.* at ¶ 21.) Under the terms of the DIL Agreement, ESR agreed that it was liable and indebted to the Bank for a total of $2,038,321.82 in principal, interest and late charges, plus per diem interest of $112.65 for each day on and after November 14, 2012, plus additional expenses and costs of collection, including attorneys' fees incurred both before and after November 14, 2012. (*Id.* at ¶ 22.) ESR agreed to transfer the Real Estate to the Bank's designee SA Group Properties, Inc. (*Id.* at ¶ 23.) For its part, the Bank agreed to apply $17,151.64 of setoff funds and $42,560.12 of collateral funds to the loan obligations. (*Id.* at ¶ 25.)

Long did not take part in the negotiations of the DIL Agreement because, as mentioned, he was no longer a member of ESR. (Def. Prop. Additional Facts ¶ 1, ECF No. 22-1.) The DIL Agreement did, however, expressly note that the Guaranty was not released under the agreement:

> Bank asserts that the payment and performance of the Loan Obligations, including payment to Bank of any deficiency balance now or hereafter owed, are guaranteed to Bank by Jeffrey S. Long, also known as Jeff Long (herein "Jeff Long"), by virtue of the Continuing Guaranty (Unlimited of Jeffrey S. Long dated June 26, 2007 (herein referred to as the "Guaranty"). Anything herein to the contrary

> notwithstanding, Bank reserves and retains all alleged rights and claims against Jeffrey Long arising under or by virtue of the Guaranty or otherwise, including Bank's alleged claims against Jeff Long for payment to Bank, or Bank's assignee or designee, of the Loan Obligations, including any deficiency balance.

(Aff. of Seth Tribon, Ex. 4 at 7, ECF No. 17-4.)

The DIL Agreement did not include an agreed upon value for the Real Estate aside from noting that it was insufficient to cover the outstanding balance of the obligations. (*Id.* at 3 ("The fair market value of the Real Estate is less than the total of the Loan Obligations").) Based on the opinion of ESR's listing broker, however, and consistent with what it thought the Real Estate might sell for at a foreclosure sale, the Bank assigned a value of $1,316,000 to the Real Estate. The Bank assigned the same value to the Real Estate in the real estate transfer tax return it filed with the State of Wisconsin in connection with the transfer of the Real Estate and reduced ESR's indebtedness by the same amount. After various adjustments for interest and late charges, but excluding some $50,000 in additional DIL disbursements which it has agreed to forego for summary judgment purposes, the Bank claims a balance due as of January 17, 2014, of $704,266.13, with interest accruing at a rate of $125.42 per day. It is in that amount that the Bank claims it is entitled to recover from Long under the Guaranty in the motion before the Court.

## II. LEGAL STANDARD

A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material" means that the factual dispute must be outcome-determinative under law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it,

would support a verdict in the non-moving party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the burden of showing there are no facts to support the non-moving party's claim. *Celotex*, 477 U.S. at 322. In determining whether to grant a motion for summary judgment, the court should consider the evidence presented in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. When the record, taken as a whole, could not lead a rational jury to find for the non-moving party, there is no genuine issue and therefore no reason to go to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. ANALYSIS

As an initial matter, there is no dispute in this case that Long is liable to the Bank for whatever remains of ESR's obligations. Although Long's answer to the complaint alleged that the Bank had released the Guaranty and a variety of other affirmative defenses, (Def. Answer 2–3, ECF No. 5), Long has not presented any of those defenses in response to the Bank's motion for summary judgment aside from briefly suggesting that the Bank's actions "may be inequitable." (Def. Br. in Opp'n 4, ECF No. 20.) Because he acknowledges in his brief that he "concedes the validity of the Guaranty and does not argue its enforceability," (*id.* at 1), summary judgment as to Long's liability under the Guaranty is unopposed and will be granted. After all, summary judgment is "'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.'" *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)). If Long wished to challenge whether he was liable under the

Guaranty for the remaining balance because the Bank either acted inequitably or released the guaranty at some point, he should have articulated those arguments in his opposition to the motion for summary judgment and pointed to admissible evidence that would support a finding in his favor. His failure to do so means that the Bank is entitled to judgment in its favor on the validity and enforceability of the Guaranty as a matter of law. The only question is whether the Court can ascertain the amount for which Long is liable under the Guaranty as a matter of law.

As for the total amount of ESR's indebtedness to the Bank, there is also no dispute. Long does not contest the fact recited in the DIL Agreement that ESR's total indebtedness to the Bank under the promissory note he guaranteed is "$2,038,321.82, in principal, interest and late charges, plus per diem interest of $112.65 for each day on and after November 14, 2012, plus additional expenses and costs of collection, including attorneys' fees incurred both before and after November 14, 2012." (PPUF ¶ 23, ECF No. 16.) Long's sole defense appears to be that the Bank failed to properly offset the value of the property it received under the DIL Agreement against the total debt. His primary challenge is to the value the Bank assigned to the Real Estate.

The parties are in agreement that Wisconsin law bars a lender from "over-recovery." *McFarland State Bank v. Sherry*, 2012 WI App 4, ¶ 21, 338 Wis. 2d 462, 809 N.W.2d 58 (citing *Continental Bank & Trust Co. v. Akwa*, 58 Wis. 2d 376, 206 N.W.2d 174 (1973)). In other words, the Bank is required to offset the amount of the debt by the value of the property it received under the DIL Agreement. Long argues that ESR's outstanding indebtedness should have been reduced by the fair market value of the Real Estate which in his view was significantly more than the $1,316,000 the Bank assigned. In support of his argument, Long has submitted an affidavit by a realtor who offers the opinion that the fair market value of the Real Estate is $1,937,714. (Aff. of

David J. Allen ¶ 11.) The same realtor also notes that the Bank listed the Real Estate with a different realtor for $2,200,000 in February 2013. (*Id.* ¶ 13.) Because there is a factual dispute over the value of the Real Estate that must be credited against the debt due and owing, Long argues that summary judgment must be denied.

But Long is entitled to be credited only with the fair value of the Real Estate, not its fair market value. The distinction is important. Fair value and fair market value are different concepts. "Fair market value is the price that property will bring when it is offered for sale by one who desires to sell, but is not obliged to sell, and it is bought by one who is willing to buy, but is not obliged to buy." *First Wis. Nat. Bank of Madison v. Wilson*, 121 Wis. 2d 505, 507–08, 360 N.W.2d 548 (Wis. Ct. App. 1984) (citing *Kremer v. Rule*, 216 Wis. 331, 338, 257 N.W. 166, 169 (1934)). Fair value, on the other hand, is "the price a person willing and able to buy the property would reasonably pay." *Bank of New York v. Mills*, 2004 WI App 60, ¶ 20, 270 Wis. 2d 359, 678 N.W.2d 332 (citing *First Wis. Nat'l Bank of Oshkosh v. KSW Invs., Inc.*, 71 Wis. 2d 359, 368, 238 N.W.2d 123 (1976)). Fair value means "nothing more than such reasonable value as does not shock the conscience of the court." *Id.* at ¶ 11. The basic premise of Long's argument for using fair market value instead of fair value is that a foreclosure sale is a distressed sale, while a deed in lieu of foreclosure is not.

This premise is mistaken. To characterize a deed in lieu of foreclosure as analogous to a sale by one who desires to sell, but is not obliged to sell, to a buyer who is willing, but not obligated to buy misapprehends the nature of the transaction. The reason borrowers and lenders agree to deeds in lieu of foreclosure is to avoid the costs and delays associated with sales by the foreclosure process. The DIL Agreement recognized these time and money-saving motivations. (Tribon Aff., Ex. 4 at 3, ECF No. 17-4 ("In view of the lack of equity in the Real Estate under current market

conditions and to avoid time-consuming and expensive litigation, Borrower, Members and Bank wish to enter this Agreement . . .").) But these shared motivations do not alter the reality of the situation that existed at the time of the foreclosure action. The parties are no more free in the one than the other.

The "buyer"—the lender/mortgagee—does not want to "buy" the real estate when it accepts a deed in lieu of foreclosure; the buyer is forced to acquire the collateral real estate because the "seller"—the borrower/mortgagor—defaulted on the underlying obligation and the buyer is compelled to protect the remaining value of the collateral real estate. The seller is equally compelled to dispose of the real estate or face foreclosure litigation and possibly a deficiency judgment. A deed in lieu of foreclosure agreement is a more palatable solution to both sides because it avoids costs and may include other incentives like the release of personal liability. But the real estate transaction is no less compelled as a result. It is simply a less expensive method of completing the compelled transaction.

There are also strong policy reasons for treating a deed in lieu of foreclosure agreement the same as a foreclosure. As the Bank observes, if a lender can apply the fair value to the outstanding balance only after foreclosure and otherwise must apply the fair market value, a lender will avoid a deed in lieu of foreclosure in favor of judicial foreclosure unless the lender is assured that it will be able to dispose of the real estate at fair market value in short order. There is no policy justification for encouraging the unnecessary use of judicial resources and the creation of needless costs and delays when all of the parties have agreed on an alternative resolution. As a result, a deed in lieu of foreclosure, like the sheriff's sale in a foreclosure, is a distressed sale and the measure of value of the offsetting collateral is its fair value.

Having concluded that Plaintiff properly chose to offset the outstanding balance of ESR's obligations by the fair value of the commercial real estate instead of the fair market value, there remains the question of whether $1,316,000 is a fair value as a matter of law. Long does not offer argument or evidence to the contrary. His sole argument is that the Bank is required to offset the amount he owes under the Guaranty by the fair market value of the Real Estate. For the reasons noted above, Long is mistaken. Even if Long had made the argument, however, it would likely fail on this record. The $1,316,000 fair value is approximately 67.9% of Long's asserted fair market value of $1,937,714, which compares favorably with fair values that did not "shock the conscience" of other courts. *E.g.*, *United States v. Buchman*, 646 F.3d 409, 411–13 (7th Cir. 2011) (affirming fair value of $322,000 despite appraisals of $513,000); *Waterstone Bank SSB v. Panenka*, 2011 WI App 1, ¶¶ 20, 330 Wis. 2d 835, 794 N.W.2d 928 (affirming fair value of $2,200,000 that was "seventy-seven percent of the equalized fair market value on the tax bill and sixty-eight percent of the equalized fair market value on the assessed value"); *Park Bank v. Zaddo Holdings, LLC*, 2009 WI App 141, ¶¶ 3, 7–9, 321 Wis. 2d 476, 774 N.W.2d 475 (affirming fair value of $800,000 when appraisals ranged from $1,208,000 to $2,100,000); *Mills*, 2004 WI App 60, ¶¶ 4, 6, 14 (affirming fair value of $271,180.91 despite two appraisals above $400,000); *JP Morgan Chase Bank, NA v. Green*, 2008 WI App 78, ¶¶ 7–8, 34–40, 311 Wis. 2d 715, 753 N.W.2d 536 (affirming fair value of $68,680 even though the same property sold at a second sheriff's sale two months later for $99,001). In any event, Plaintiff waived the argument. *See*, *e.g.*, *Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 597 (7th Cir. 2012) (concluding that plaintiff's contract claims were waived when "he did not respond to [Defendant]'s motion for summary judgment"); *Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003) ("[B]ecause [Plaintiff] failed to delineate his

negligence claim in his district court brief in opposition to summary judgment or in his brief to this Court, his negligence claim is deemed abandoned."); *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 624 (7th Cir. 2001) ("[Plaintiff] abandoned the alternate claims by failing to address them in his response brief to the [Defendant]'s motion for summary judgment.").

Finally, Long lists as one of the "facts that require the denial of summary judgment" that "the Bank failed to attribute any value to the personal property on site and also transferred to the Bank under the Agreement; the value of the personal property may be $100,000." (Def. Br. in Opp'n 2-3, ECF No. 20.) Long argues that the amount of his indebtedness under the Guaranty should also be reduced by this amount.

Here, again, however, Long offers no admissible evidence to support his contention that the personal property conveyed to the Bank had such a value. The evidence cited consists of an email from Timothy Anderson, an attorney involved in the negotiations for the DIL Agreement, repeating information he received from Dennis Long, the father of the defendant who sold the Real Estate to ESR in 2002. (Aff. of Dennis J. Long, ¶¶ 1, 5, Ex. 4.) The email reads:

> There is approx. $100,000 or more of business personal property remaining in the premises (such as business furniture and cubicles for 80 people, which cubicles originally cost approx. $5,000 each new, and which remain in good condition); I bring this to your attention really as an FYI and to let you know there is added value to the Bank in the deal.

(*Id.*, Ex. 4.) This is not admissible evidence of the value of the personal property left on site. It has no foundation. Indeed, it is unclear what the source of the opinion is. As a result, Long has failed to offer evidence to support his affirmative defense. Moreover, under the terms of the Guaranty, Long agreed that the Bank could settle or release any collateral, or apply amounts in any manner it elected, and he waived any defense based on setoff or counterclaims, lack of notice or suretyship

or impairment of collateral. Under these circumstances, Long's dispute over the value of personal property is not enough to avoid summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is **GRANTED**. The Clerk is directed to enter judgment in the amount of $704,266.13, plus accruing daily interest of $125.42 from January 17, 2014 to the date of this order.

**SO ORDERED** this   19th   day of May, 2014.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court