UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

U.S. BANK NATIONAL ASSOCIATION,

        Plaintiff,

v.                                       Case No. 13-C-0257

JEFFREY S. LONG,

        Defendant.

## ORDER GRANTING PLAINTIFF'S
## MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

This case is before me on a motion for attorneys' fees, costs, and expenses brought by Plaintiff U.S. Bank National Association ("the Bank"). The Court granted the Bank's motion for summary judgment in this diversity action to collect the balance due and owing under a "Continuing Guaranty (Unlimited)" (hereinafter, "the Guaranty") given by Defendant Jeffrey S. Long. (ECF No. 23.) On May 19, 2014, the Court entered judgment in the amount of $704,266.13, plus accruing daily interest of 125.42 from January 17, 2014 to the date of judgment. (ECF No. 24.) The Bank filed this motion for attorneys' fees on June 2, 2014. Defendant's response was due by June 25, 2014. Because Defendant's time to respond to the motion has elapsed and no response has been filed, the Court will decide the motion on the current record. For the reasons that follow, the Bank's motion will be granted.

Before examining what amount of fees, costs, and expenses the Bank is entitled to, the Court must first determine whether the Bank is entitled to payment at all. This is a question of state substantive law. *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004). The

Guaranty further provides that it "shall be governed by the internal laws of the State of Wisconsin, except to the extent superseded by Federal law." (Continuing Guaranty ¶ 11, ECF No. 1-1.) The default law in Wisconsin is the "American Rule," in which "parties to litigation are generally responsible for their own attorney fees incurred with respect to the litigation." *Reid v. Benz*, 2001 WI 106, ¶ 34, 245 Wis. 2d 658, 629 N.W.2d 262. There are exceptions to the general rule, including "where . . . contracts provide for fee-shifting." *Id.* Wisconsin courts will not award "attorney fees based on a contractual provision unless the contract language 'clearly and unambiguously so provides.'" *Lochman v. Lochman*, 2013 WI App 138, ¶ 8, 351 Wis. 2d 684, 840 N.W.2d 139 (quoting *Hunzinger Constr. Co. v. Granite Res. Corp.*, 196 Wis. 2d 327, 340, 538 N.W.2d 804 (Wis. Ct. App. 1995)). "Contract language is considered ambiguous if it is susceptible to more than one reasonable interpretation." *Danbeck v. Am. Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150. Where the unambiguous meaning of the terms of the agreement so provides, Wisconsin courts will award a prevailing party the "entire amount of fees and costs" of litigation. *See D.L. Anderson's Lakeside Leisure Co. v. Anderson*, 2008 WI 126, ¶ 101, 314 Wis. 2d 560, 757 N.W.2d 803.

In this case, the language of the Guaranty unambiguously provides for Defendant's liability for the Bank's attorneys' fees, costs, and expenses incurred in this case. First, under the Guaranty, Defendant "absolutely and unconditionally jointly and severally guarantees prompt payment of and promises to pay or caused to be paid to the Bank the Obligations (as hereinafter defined), whether or not the Obligations are valid and enforceable against the Borrower, whenever the Obligations become due . . ." (Continuing Guaranty ¶ 1, ECF No. 1-1.) More specifically, the Guaranty defines the term "Obligations" as follows:

2

> [A]ll loans, drafts, overdrafts, checks, notes and all other debts, liabilities and obligations of every kind owing by the Borrower to the Bank . . ., *including interest thereon and all costs, expenses and reasonable attorneys' fees (including fees of inside counsel) paid or incurred by the Bank at any time before or after judgment in attempting to collect any of the foregoing, to realize on any collateral securing any of the foregoing or this Guaranty, and to enforce this Guaranty.*

(*Id.* at ¶ 2 (emphasis added).) Given the language of the Guaranty between the Bank and Defendant, the Court concludes that the Bank is entitled to the expenses, costs, and reasonable attorneys' fees associated with the litigation over the Bank's efforts to foreclose on the collateral and enforce the Guaranty itself. Defendant's failure to file a responsive brief to the Bank's motion is a further indication that there is no other reasonable interpretation of the unambiguous language.

Although the issue of whether a party is entitled to attorneys' fees, costs, and expenses based on a contract is a matter of state substantive law, whether their amount is reasonable is a procedural issue governed by federal law in a diversity case. *See Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 521 (7th Cir. 1999); *see also Taco Bell*, 388 F.3d at 1075–76. Specifically, the standard is "commercial reasonableness." *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996). The Seventh Circuit has identified a few factors that a court may consult when determining whether fees and costs are commercially reasonable.

The "best evidence of the market value of legal services is what people pay for it." *Id.* Thus, if the fees were "actually paid in the ordinary course of . . . business," strong evidence exists that what the prevailing party is requesting is commercially reasonable. *Medcom Holding*, 200 F.3d at 520; *see also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001) ("[If] counsel submits bills with the level of detail that paying clients find satisfactory, a federal court should not

3

require more"). Reasonableness is further indicated if the bills are paid at a time when ultimate recovery is uncertain. *Medcom Holding*, 200 F.3d at 521. The relationship between the aggregate costs and the stakes of the case and the opposition's litigation strategy is another gauge for reasonableness. *Knoll Pharm. Co. v. Auto. Ins. Co.*, 210 F. Supp. 2d 1017 (N.D. Ill. 2002) ("[C]ourts must also look at the aggregate costs (not a line-by-line analysis) to ensure that they were reasonable in relation to the stakes of the case and in relation to the opposition's litigation strategy.") (citing to *Medcom Holding*, 200 F.3d at 521). Finally, if "corporate inside counsel monitor bills submitted by outside counsel" and those bills are paid, reasonableness can be inferred. *Balcor*, 73 F.3d at 153. Overall, in looking at these factors, the court's responsibility is to guard against "the tendency to take additional risks (or run up extra costs) if someone else pays the tab." *Medcom Holding*, 200 F.3d at 521.

Applying the commercial reasonableness standard to this case, the Court concludes that the attorneys' fees, expenses, and costs totaling $62,802.35 that the Bank submitted with its motion are reasonable. However, a portion of this amount—$1,003.50—has already been taxed by the Clerk of Court against Defendant. (ECF No. 29.) This amount will be subtracted from the $9,517.35 of expenses. As a result, the Bank is entitled to $53,285 in attorneys' fees and expenses of $8,513.85.

Several facts underlie this conclusion. Because "best evidence of the market value of legal services is what people pay for it," *Balcor*, 73 F.3d at 153, the Court first notes that the Bank has presented dozens of pages of redacted bills that the Bank actually paid. Having examining the bills presented here, the Court can conclude that "counsel [has] submit[ted] bills with the level of detail that paying clients find satisfactory." *In re Synthroid Mktg. Litig.*, 264 F.3d at 722. Moreover, the Court finds that the Bank paid most or all of these bills without being "certain" of the fact that it

4

would be reimbursed for its litigation costs. *Medcom Holding*, 200 F.3d at 520–21. In addition, the Court concludes that there is a reasonable relationship between the potential stakes in the case and the litigation costs. The Bank's attorneys' fees and costs of approximately $60,000 on a debt of more than $2,000,000 is not unreasonable. Moreover, the fees and costs resulted in the $700,000 judgment in this case, as well as the initiation of the foreclosure action and the negotiation of the deed-in-lieu of foreclosure agreement regarding the real estate valued at more than $1,000,000. Nor is there any indication that the Bank was trying to "run up" the litigation costs in this case: it negotiated a lower hourly rate of $225 and accepted the deed-in-lieu to reduce the cost of realizing on the collateral. Finally, because Defendant has not responded to the Bank's motion, he necessarily cannot overcome the "strong evidence" that the fees and expenses were reasonable.

For the foregoing reasons, Plaintiff's motion is **GRANTED**. The Clerk is directed to enter an amended judgment adding attorneys' fees of $53,285.00 and expenses of $8,513.85 to the previous judgment in the amount of $704,266.13.

Dated this __3rd__ day of July, 2014.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court